Thank you, Your Honor, and may it please the Court, my name is Michael Maurer. I represent Alexandria Manufacturing Incorporated, ESOP. The issue before this Court concerns whether the magistrate in the District Court erred in concluding that the anti-assignment policy in this particular policy prevents or prohibits the transfer of post-loss rights. The Oregon court in the Holloway decision and in interpreting the Hoffman decision set forth the framework for which a court shall engage in a determination, more specifically an interpretation of an insurance policy. Start by noting that the interpretation is a question of law and the task for a review in court is to ascertain the intention of the parties. Is it your position that Grotje, or however you say it, is no longer good law? No, our position is Grotje is still good law. I assumed that was the case, so for the practical matter, since Hoffman didn't even mention it, you would like us to treat Hoffman and Holloway as essentially in opposite to this matter, is that right? No, that is not correct, Your Honor. Our position is while Grotje is in fact still binding law and good law, it is not in opposition to either Hoffman or Holloway. Hoffman is really a procedural case. It defines how to go about analyzing insurance policies, but its particular policy was very different than this one. So the real question, I think, is whether Holloway is sufficiently similar. And I agree. Now, I think what's important to note, though, is Holloway did not even discuss Grotje and did not in any way make a blanket pronouncement that anti-assignment clause will prohibit the transfer of post-loss rights. Rather, the court in Holloway very carefully analyzed the particular anti-assignment clause in Holloway. And based upon that analysis and using the procedural analytical framework as enunciated in Hoffman, concluded that because of those very specific phrase and some of the very specific terminology used in the anti-assignment provision in the Holloway insurance contract, that that prevented. So really everything boils down to whether Gross or Grotje, I mean, that's only one of the things I guess there is to disagree about in that case, is how to pronounce it. But the question really is, is it still good law? If so, you win. If not, they win. I mean, isn't that really what it comes down to? No, I do not believe that is the case, Your Honor. And the reason for that, I think the court could conclude Grotje is still good law, and therefore we win. But even, let's assume Grotje doesn't exist. Even without the existence of that case, we still prevail. And the reason we prevail is because applying the analytical framework as enunciated in Hoffman and as yet again used in the Holloway decision, one comes to the determination that at a minimum, at a bare minimum, there is an ambiguity in the Oregon courts have instructed us, that is to be resolved against the insurer. Now, what Hoffman and Holloway provides is that the determination of the party's intention in a phrase first starts with, is the term or the terms in that phrase defined in the policy? They are not in this case. Those terms are not defined. So then Holloway and Hoffman instruct us then that in order to analyze whether there is any ambiguity is to resort to various aids in discerning what the party's intended. And that's where we're at with both, for example, in the Holloway case and where we are at in this particular analysis. The court needs to determine what the party's intended by insertion of the particular phrase, i.e. the anti-assignment phrase. Now, first step in that analysis as directed by Holloway and Hoffman is determine whether the phrase has plain meaning. Is there only one possible, plausible interpretation of that phrase? Well, what do you do with the phrase? You conveniently put it up here. It says, your rights under this policy, I'm elipsing out. That's Holloway. That's not this policy. Okay. Come on. Wait a minute. Holloway. Okay. Holloway says, your rights elipses out duty. Under this policy may not be transferred without our written consent. Juxtapose that against your terminology. Absolutely, Your Honor. Okay. Now, in Holloway, did they find that to be plain meaning? Yes, they did. Okay. So now you go take a look at assignment of interest under this policy. Shall not bind insurer unless their consent is endorsed hereon. And it wasn't endorsed in any sense of the word. Okay? So, applying now, grossie isn't overruled. But you said you would win even if grossie didn't exist. That's where I'm trying to focus on Holloway. If we assume grossie doesn't, and we apply methodology of Holloway, I look at these two phrases. Why isn't rights under this policy, that's clear. Why isn't assignment of interest policy? Why isn't that equal? Rights, interest, what's the operative distance to it? Absent grossie. Your Honor, if you take a specific word, there may not be a difference. But what Holloway provides, and what Hoffman provided was, you have to look at the phrase in light of interpreting what the parties intended in the contract. And it's not the word. It's not the word right versus interest, but rather the phrase itself. And I believe the courts were clear in Holloway and Hoffman is the phrase. It is not just one term. So we look at this phrase, the sentence, and at a minimum, there are two plausible explanations. There are two plausible interpretations of that phrase in our case where there is not necessarily a Holloway. What we have here is clearly we are dealing with a plausible interpretation of this phrase is that it only relates to pre-loss assignment of interest of the policy. And where do I come to that support? Well, first and foremost, as I was thinking about this argument and stepping back a little bit last night, all the case law from the other jurisdictions which we cited interpreting the exact same phrase or almost exactly the same phrase where it says endorsed hereon, assignment of interest and endorsed hereon, provides the basis or at least a plausible, plausible explanation that in creating that particular phrase, the parties intended to prevent only a prohibition against assigning a pre-loss interest. Now, as the court is well aware, there are certainly strong policy arguments for that as well. For example, a insurance company has, of course, a very strong interest in only insuring the entity for which it had contracted with. I'm puzzled as to why you're focusing so much on Holloway given the fact that the assignment in Groce was virtually identical to the one in this policy. Well, absolutely. Your Honor, and the reason I'm doing that is because the lower court rejected Groce. And I think it's clear. I don't think there's any doubt that if the court concludes Groce is controlling law, which we believe is the case. Well, let me just ask you this. Do you think of any reason why it would not be since neither of the other cases even mention it? No, absolutely not. And as cited in our brief, the Holloway Court had ample opportunity to, at the Court of Appeals level, at the Supreme Court, Oregon Supreme Court level, as well as motions for reconsideration to go back and say address the Groce decision. It specifically chose not to. And the reason I believe it did, Your Honor, is with the analytical framework as enunciated in Hoffman and Holloway, we are dealing with very different phrases. Now, Groce, granted, was issued by the Oregon Supreme Court prior to Hoffman and didn't engage in that analysis. But the Holloway Court did not overrule it, did not even mention it. So right there, it's binding law. But my argument was, even if it wasn't binding, even if it didn't even exist still under Holloway in the analytical interpretation where there is more than one plausible explanation or one plausible interpretation, if nothing else, you can look at the very precise wording in the Holloway insurance policy and how the court interpreted much of that. That analysis is your backstop. Yes. If Groce doesn't apply from our perspective, then you're saying, nonetheless, you look at these other cases and you follow that analysis and you get the same result. Yeah, exactly. Now, the, I think what's, and again, stepping back to the Holloway framework and the difference in why there is at least two plausible explanations is where it references endorsed Huron. That creates a plausible interpretation that the parties only intended to prohibit this pre-loss assignment. Now, but you don't stop there. If there are two plausible explanations, then Holloway and Hoffman direct us to examine the policy and the terms in the broader context as the policy as a whole. Again, you do that, you still have two plausible explanations, two plausible interpretations, and with that, as the Oregon courts have instructed us, with that ambiguity still remains after that, then it's resolved against the insurance company. Counsel, did you want to save some time? I did. I'm at three minutes and I would like to reserve that if I may. Thank you, Mr. Marrow. Your Honor, Don Verfurth representing Illinois Union in this matter. I think I'll pick up exactly where Judge Smith asked the question with regard to Gross, Grosse, whatever exactly the name of it is. It is our position and I think it's clear that the Gross case does not apply in this matter. Why? Gross was, first of all, Gross was decided in 1968. Hoffman was decided in 1992. It does not, the court in Oregon does not have to explicitly overrule a case in order to say that it no longer applies if it is inconsistent with a later decision. Well, it has, I don't see the inconsistency myself. Because it seems to me that the policy, well, the policy in Hoffman is completely different, but you're relying primarily on Holloway, which was post-Hoffman analysis, and it seems to me that it's at least plausible that an interest under the policy refers to a financial stake in the policy from the get-go, whereas rights and duties are much more broad, much more general. It seems to me that they can be harmonized, particularly, and I guess I'm particularly concerned because it seems to be sort of black-letter law, Williston on contracts, that clauses like this are really meant only to prohibit pre-laws assignment. And I just, don't we have to harmonize them if we can? Your Honor, I don't think they can be harmonized. I think what they. We have, it should, aren't we obliged under Oregon law to try to if we can and not assume that a case was overruled when it is never mentioned? I think that the difference. To answer that question, would you factor in, that's why I wasn't persuaded as counsel was absent grossly. But with grossly, they're construing this very clause and done so in 1968, and the company continuing to use a phrase which has an established meaning in Oregon, the matter of law. And you continue to use in your policies the same phrase and now come in and say, well, because the rationale has changed, now you go back and revisit the law. I find that very hard to accept. First of all, Your Honor, with regard to the gross case is the decision was made based on two California cases, and the discussion in that case was based on what I call the philosophical or the policy argument. It's Mr. What? It's still Oregon law. But. It's just as binding if it has no rationale or a silly rationale if there's a clear holding. That same, first of all. And one of our colleagues, Judge Goodwin, was on the court at that time, so that even. I understand that, Your Honor. There is the difference, basically the time difference between 1968 and 1992, where in Hoffman, even though they weren't talking about the same type of phrases, the anti-assignment phrases, they were talking about other phrases. They said that you have to look at the plain meaning. It took it from the analysis of an insurance policy from sort of on philosophical grounds or general policy grounds to let's look at the language of the policy. What is the plain meaning of the policy? Those same arguments, that is that it didn't affect the insurance company if it was a post-loss assignment as opposed to a pre-loss assignment, etc., were all made in the Holloway case. Mr. Maurer is correct that Gross was not mentioned initially in the Holloway case, but all of the same arguments that had been made in the Gross case following the other jurisdictions which followed this philosophical approach were made in Holloway. And in fact, those were the arguments that were made in the Holloway case at the Court of Appeals, and the Supreme Court rejected those arguments in favor of going to looking at the plain language. But still without overruling Gross. That's not necessarily true, Your Honor. Still without mentioning it. Pardon? Without mentioning it. Without mentioning it, they implicitly pointed out that the construction of an insurance policy has changed, and now the focus from 1992 on is on the language of the policy. It's also important to note that there was a motion for two things. One is there's a statement in the Holloway case that says that there's no statute or case law which would apply the, which would prevent the application of the anti-assignment clause to both pre-loss and post-loss. They didn't mention Gross specifically, but they said that there was no decision or statute. That would prohibit it, but doesn't require it either. You're asking for it to be required, and the wording in Holloway and the wording in Gross in your policy are not the same. They are not. Isn't it plausible to view interest as meaning something different than the sort of more generic rights and duties? Your Honor, I don't think that's, I don't think you can. If you have to, if you look at the plain meaning, and this is what Judge Papik did below, is he looked at the plain meaning, and he looked at the dictionary definition, and concluded that the word interest is in fact is probably broader than the word rights, and that it is used interchangeably by the court, and that the dictionary definition of interest includes rights. So, when you apply the analytical analysis and look at the plain meaning of the term interest, you reach the same conclusion that it includes rights. Counsel, you're obviously a very learned guy, and you know your area well, but you represent an insurance company. They're very, very careful about how these phrases are written. What's your answer to Judge Fisher's question that you had the Grote or however you pronounce it, the Hoffman case with almost identical language for all those years, and your company never changed it after Holloway or anything else? They're smart people. Why would they not have changed it if your construction of that language is correct? Because after the Hoffman case, there's no reason to change it, because the Hoffman case said you now look at the plain meaning. So, your policy never changed, but it meant something different for 30 or 40 years, and suddenly it means something new without changing. Your Honor, frankly, I think the Grote decision was incorrect, because it was. Well, we're bound by it. You're bound by it, but you're only bound by it to the extent that it is still good law, and if it is inconsistent with the. Well, you were bound by it even if it was poorly reasoned also. If you thought it was wrong, you could have, as Judges Smith and Fisher both have pointed out, you could have rewritten the clause to your liking and say whatever it is you wanted to say, but under Oregon law, it had a specified meaning for 30 years, and you're saying that without changing a word of it, it suddenly popped into a whole different meaning. Your Honor, I guess the law changed, and I realize that. You weren't advising the insurance companies. I wasn't advising the insurance companies, and the court here wasn't. You need to rewrite the policy to be clear, even though insurers are not able to do that. Just rely on going to court and litigating in a federal court. In reality, the wording of the policy is not unique to Oregon. It's a national policy. Has the language been changed since this litigation began? Not that I'm aware of, Your Honor, but I honestly don't know the answer to that question. Your argument, as learned as it is, reminds me of my lie. In order to save the village, it was necessary to destroy it. I mean, I don't understand how you can say that something that has meaning for all these years and has been used all of a sudden has a different meaning. I mean, you can parse the dictionary, you can do whatever you want, but why wouldn't you change it if your meaning is correct? Your Honor, I'm not sure why we wouldn't have changed it. I mean, I don't know the answer to that. They didn't consult me. Here's the problem. It's more than just that we didn't change it. It's the fact that the company used the language in Oregon knowing that it limited. That language only covered post-loss and pre-loss. I get that. Anyway, that it would not affect, not be applicable in this case, right? So they knew that. That was their intent. It had to be their intent because they knew when they used it that they were not limiting insured from making the kind of assignment that's eligible. So how can it be that they could rely on a case, a methodology of analyzing language to expand their own internal intent? Do you understand what I'm saying? I think I understand what you're saying, Your Honor. I mean, one thing, there seems to be an assumption that this policy has been, that Illinois Union has used this policy for years. This was a policy that was written in 2004, I believe, or 2005. This particular underwriting company didn't even exist prior to 1992. So this language that is used in this policy is language that was developed after the Hoffman case. That may be, but when you are writing a policy for Oregon insurers and you go and Google the language exercises that everyone does, and you find that this phrase has specific meaning in Oregon, which carries with it a right to find claims such as is done here, and if your intent is not to allow that, then it does not make any sense to say, well, we're going to use language that in Oregon has not been yet overtly, and we're going to use it, and then go litigate sometime and hope that we fail. A, good lawyering, but it passed out on what their understanding of the policy, the limitation itself. Given the state of, I understand that the gross case existed, but I think the insurance company has a right to rely upon the enunciation of the Oregon Supreme Court in Hoffman, where you look at the plain meaning. I think they changed the language, because you're telling us that the language means something different looking at Hoffman than it did under Grotje. Because of the Oregon Supreme Court changing the way the analysis in the gross case. I said, why didn't it change the language if that's correct? Because there'd be no reason to change the language, because if you use the analysis of Hoffman, that is, you look at the plain meaning, you look at the dictionary meaning, interest has a broad meaning and includes rights. But then like Judge Fisher said, you just guarantee that this is going to be litigated. I would think that the insurance company would want to avoid that, want to go with language that was clearly understood in Oregon under Grotje and had a clear meaning. You could have put a writer in. You could have said interest in this case is defined to include both before and after. But that wouldn't be necessary under, again, under the Hoffman case. Counsel, you're just, the insurance companies do have a burden under, I think, most state laws to write the policy clearly. And if they don't, then it falls against them. And to say that it is even credible that an insurance company would go, waltz in whenever they're formed. They would go in and they would use a phrase that has a construed meaning and say, we're going to rely on a case that doesn't use the same language as a, doesn't, I'm not sure whether Holloway had decided by the time they did. But if they did, then why didn't they use rights and duties? But in any event, the idea that in a contract analysis, even under Oregon laws to ambiguity, you could think, you could go in and now say a phrase that has been specifically interpreted to be broader than what your intent is, that you wouldn't at least put in something to say the insurance company to clarify that you now believe Grotje was wrongly decided. Bill Goodlaw, we're going to make sure, because you control the pen. The insurance company controls the pen. And then it doesn't do that. I just find that puts an impossible burden on the courts to try and then determine what your client's intent may be. And I think you could say the same thing about the language in the Holloway case. If you looked at the language in the Holloway case and you applied the Grotje decision to that, you would be applying the philosophical or the policy argument and you would reach the same conclusion. And yet the court rejected that and said, just because something is broad, doesn't make it ambiguous. And I think we're talking past each other. Any other questions here? I think. No, just go ahead. The one thing was the endorsed hereon. Again, there is this issue about whether there is a, who does the endorsements and when. I think the record is clear that an endorsement can be issued by the underwriting department at any time from the inception of the policy to the expiration of the policy. So I think Judge Papik's conclusion that really endorsed hereon means to sign is the plain meaning of that, of the term endorsed hereon and does not make it ambiguous.  Thank you, counsel. I believe you have some rebuttal time remaining. Just a couple of points, if I may. First of all, counsel obviously cannot argue that Grotje has been explicitly overruled. It obviously has not, despite at least a couple of opportunities by the Oregon Court of Appeals and by the Oregon Supreme Court, it has not even been mentioned. Therefore, what Illinois Union has to resort to then is an argument that the Oregon Supreme Court implicitly overruled Grotje. And. Under Oregon law, in order for us to find that Grotje has been overruled, don't we have to find that the subsequent cases, that the logic of it leaves no ground for any aspect of survival of Grotje? Just the whole underpinning is completely cut out from under it. I think that is a fair characterization of Oregon law. The GL versus Kaiser Foundation case, the Oregon Supreme Court case, very clearly enunciates the three bases and the three factual situations and policy decisions that a court would have to find to rule that a long-standing decision, one of over 40 years now, was implicitly overruled. And there is no appellate law in Oregon where anyone has undertaken that with respect to Grotje? No. No. I have Judge Goodwin in the courtroom up on the wall that we should probably ask him. It is a symbolically fortuitous for us. Very quickly, if I may, concerning the Hoffman decision, Hoffman provides a framework. Hoffman provides a framework in analyzing insurance policies and nothing more. While it is helpful, it doesn't provide the support that Illinois Union would suggest it has, is that somehow Hoffman came out and you could just toss away any wording that you wanted in their anti-assignment clauses, because Grotje still was good law and Hoffman didn't in any way overrule or impact that. And then finally, on the issue, if Grotje isn't good law, obviously I spent some time discussing why, even under Holloway, I still think we succeed the endorsement here on language. While there is some conflicting evidence in the record concerning how and when that might be issued, the underwriter who issued this policy stated it would be issued, endorsements are at time of policy inception or renewal, even if, and then the Illinois Union later submitted an affidavit from an underwriter saying, no, you could put an endorsement on at any time, even if that's the case. The bottom line is what's clear in the record is the underwriting department deals only with policy issues, not claims issues, deals only with pre-loss interest, not post-loss. The claims department does that. Only underwriting, the record is clear, only the underwriting department issues endorsements. One more reason why, at a minimum, there are two possible interpretations of that under Holloway. Thank you. Thank you, Counsel. The case just argued is submitted. We appreciate both of your arguments and we will take about a ten-minute break.
judges: Graber, Fisher, Smith